UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CARLTON DUANE BALLARD, | ) CASE NO. 4:21-cv-570 |
| | ) |
| Petitioner, | ) JUDGE JAMES R. KNEPP II |
| | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) |
| WARDEN MARK K. WILLIAMS, | ) |
| | ) REPORT AND RECOMMENDATION |
| Respondent. | ) |

**I. Procedural Background**

On March 11, 2021, Petitioner Carlton Duane Ballard (Petitioner), represented by counsel, filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241. (R. 1). On the same date, Petitioner filed a "Brief in support of Petition for credit for time served." (R. 3). On March 29, 2021, Petitioner filed an amended habeas petition, but did not file an amended brief in support. (R. 10).

On April 15, 2021, Respondent filed a Motion to Dismiss or in the Alternative Motion For Summary Judgment. (R. 13). On May 17, 2021, Petitioner, through counsel, filed a brief in opposition. (R. 14). On June 1, 2021, Respondent filed a reply in support of his motion. (R. 15). This matter has been referred to the undersigned magistrate judge.

**II. Factual Background**[1]

On September 18, 2016, Petitioner was arrested by the Portage Department of Public

---

[1] Petitioner's brief in opposition to Respondent's motion to dismiss does not challenge the accuracy of the factual background set forth in Respondent's motion. (R. 14). Rather, Petitioner asserts that his attempts to challenge the computation of jail time credit demonstrate exhaustion. (R. 14, PageID# 214).

Safety in Kalamazoo County, Michigan (R. 13-1, PageID# 184, Exh. 1) and remained in continuous state custody on a number of warrants. (R. 13-1, PageID# 181, Declaration of Kneyse Martin at ¶4).[2]

On November 3, 2016, the 9th Judicial Circuit Court in Kalamazoo County, Michigan, revoked Petitioner's probation and sentenced him to one to five years imprisonment in Case No. 2013-1822-FH. (R. 3-5, PageID# 53, Exh. F; R. 13-1, PageID# 186; Exh. 2). Petitioner was awarded 57 days of jail credit toward this state probation revocation sentence. (R. 3-5, PageID# 54; Exh. F; R. 13-1, PageID# 186; Exh. 2).

On January 12, 2017, Petitioner was indicted in federal case number 1:17-cr-00019-JTN in the Western District of Michigan for possession of methamphetamine with intent to distribute and possession of heroin with intent to distribute. (R. 3-1; Exh. A). On February 10, 2017, Petitioner was "borrowed" from the Michigan Department of Corrections (MDC) pursuant to a Federal Writ of Habeas Corpus *Ad Prosequendum* by the United States Marshals Service (USMS) in connection with aforementioned federal case 1:17-CR-19. (R. 13-1 at ¶7, Martin Decl., PageID# 181). Petitioner pleaded guilty to both counts of the Indictment at a change of plea hearing on May 24, 2017. (Case No. 1:17-cr-00019, R. 30-32). The court sentenced Petitioner, on December 11, 2017, to 70-months in prison on each count to run concurrently to one another. (R. 3-2, PageID# 35, Exh. B; R. 13-1, PageID# 190, Exh. 5). The sentences were also to run concurrent to "any undischarged term in Kalamazoo, County Circuit Court case

---

[2] According to his sworn declaration, Mr. Martin is a Correctional Program Specialist with the Federal Bureau of Prisons (FBOP) working at the Designation Sentence and Computation Center (DSCC) with access to the computerized SENTRY database that maintains judgment and commitment files, inmate central files, and other records maintained by the FBOP. (R. 13-1 at ¶¶ 1-2, PageID# 180).

number 2013-1822-FH." *Id*. at PageID# 191.

On December 18, 2017, Petitioner was returned back to the MDOC to complete his state sentence. (R. 13-1, PageID# 189, Exh. 4; Decl. Martin at ¶9). Petitioner was paroled from his state sentence on February 14, 2018, and released to the "exclusive" custody of federal authorities. (R. 13-1, Martin Decl. at ¶10, PageID# 182, 197, Exh. 6). As stated above, until his state parole, Petitioner's federal sentence was being served concurrently with the state sentence as ordered by the sentencing judge. (R. 3-2, PageID# 35, Exh. B; R. 13-1, PageID# 191, Exh. 5). The FBOP prepared Petitioner's sentence computation based on his 70-month term of imprisonment commencing December 11, 2017—the date he was sentenced. (R. 13-1, PageID# 182, Martin Decl. at ¶11). Petitioner was awarded 46 days of jail credit from September 18, 2016, to November 2, 2016.[3] (R. 13-1, PageID# 202, Exh. 7).

As of March 29, 2021, based on a sentence beginning on December 11, 2017—the date of sentencing—Petitioner's full term expiration date was August 25, 2023.[4] (R. 13-1, PageID# 202, Exh. 7). However, due to good conduct time (GCT) and elderly offender credits, Petitioner's projected satisfaction date was reduced to November 6, 2021. *Id*.

Petitioner clearly objects to the FBOP's prison-time computation. According to the computerized SENTRY database, Petitioner has not exhausted the administrative remedy process, which requires a final appeal to the FBOP's General Counsel. (R. 13-2, PageID# 204,

---

[3] As noted above, September 18, 2016, marks the date of Petitioner's arrest by state authorities, while November 2, 2016, marks the day prior to his parole revocation and imprisonment on a state sentence.

[4] A full 70-months from the date of sentence would result in an expiration of October 11, 2023. The August 25, 2023 full-term date stems from the award of 46 days of jail credit noted in the previous paragraph.

Decl. Robin Summers at ¶4).[5]

On July 5, 2018, Petitioner filed Administrative Remedy No. 945762 with the Warden of FCI Gilmer alleging he was missing jail credit. (R. 13-2 at ¶6, PageID# 204-05, 208-09, Exh. 1). The Warden denied the request on July 24, 2018. *Id*. On August 10, 2018, Petitioner appealed Remedy No. 945762 to the Regional Director of the Mid-Atlantic Region.[6] (R. 13-2 at ¶6, PageID# 205, 208, Exh. 1). The Regional Director denied the request on September 6, 2018. *Id*. On September 20, 2018, Petitioner again submitted appeal 945762 to the Mid-Atlantic Region. (R. 13-2 at ¶6, PageID# 205, 209, Exh. 1). On September 27, 2018, it was rejected because it was on the incorrect form and he was missing his lower level filing. *Id*. Petitioner was told he could resubmit in proper form in 10 days. *Id*.

On October 2, 2018, Petitioner attempted to appeal Remedy No. 945762 to Central Office.[7] (R. 13-2 at ¶6, PageID# 205, 209, Exh. 1). On October 22, 2018, his appeal was rejected because he did not include a copy of his lower level filing and, according to Ms. Summers, his appeal was untimely. *Id*. He was informed to provide staff verification that the untimely filing was not his fault and he could resubmit within 15 days. *Id*. Petitioner did not resubmit Remedy No. 945762. *Id*.

---

[5] According to her sworn declaration, Ms. Summers is a paralegal with the FBOP working at the NE Regional Office with access to the SENTRY database that maintains inmate data, including admission/release dates and the status of administrative remedy requests. (R. 13-2 at ¶1, PageID# 203). Ms. Summers avers that on or about April 1, 2021, she searched SENTRY for all administrative filings submitted by Petitioner. *Id*. at ¶¶5-6.

[6] "An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).

[7] "Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP–11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses. Appeals shall state specifically the reason for appeal." 28 C.F.R. § 542.15(b)(1).

On January 9, 2019, Petitioner submitted appeal 964430 to the Warden at FCI Gilmer, this time specifying that he believed he was missing 347 days of jail credit. (R. 13-2 at ¶6, PageID# 205, 210, Exh. 1). On January 17, 2019, his request was denied, and Petitioner did not appeal the Warden's decision. *Id*.

### III. Law and Analysis

#### A. Standard of Review

Writs of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). "The statute [§ 2241] is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (citations omitted). A petition under section 2241 may only be used by a federal prisoner to challenge the manner in which his sentence is being carried out (*e.g.*, the computation of sentence credits or parole eligibility). *See United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1999*); accord Peguero v. Hanson*, 4:14-cv-2642, 2015 U.S. Dist. LEXIS 45964 at *2 (N.D. Ohio, Apr. 8, 2015) (Polster, J.).

Respondent has moved to dismiss the petition on the basis that the claim is unexhausted and, alternatively, argues that summary judgment is proper because the FBOP correctly calculated Petitioner's prison term. The court addresses these arguments in reverse order, as the second argument goes to the merits of the claim.

#### B. Calculation of Sentence

Respondent moves for summary judgment, contending the FBOP correctly calculated Petitioner's sentence.

5

### 1. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018). The moving party must demonstrate "the basis for its motion, and identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quotation marks omitted). The non-moving party may not simply rely on his pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quotation omitted).

### 2. Application to the Present Case

Here, Petitioner has not challenged the facts set forth in Respondent's Motion to Dismiss/Motion for Summary Judgment. Petitioner, however, has suggested that an evidentiary hearing is necessary to determine whether Petitioner would have been paroled by State of Michigan authorities had he successfully completed a "Special Alternative Incarceration" (SAI) program but for the issuance of the federal writ. (R. 14, PageID# 212). As explained below, the issue of Petitioner's participation in the SAI program is irrelevant, as the FBOP could not have legally credited such time against Petitioner's federal sentence. The facts relevant to the disposition of this matter—such as the date of Petitioner's federal sentencing, the dates Petitioner was transferred to and from federal custody, and the fact that Petitioner received credit towards his *state* sentence for the time period ensuing on November 3, 2016 until December 11, 2017—are not in dispute.

"After a district court sentences a federal offender, the Attorney General, through [FBOP], has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 18 U. S. C. § 3621(a)); *accord McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993) ("Attorney General, not the court, has the authority to compute sentence credits for time in detention prior to sentencing."); *Vincent v. Shartle*, 2010 WL 4366063 at *1 (N.D. Ohio Oct. 28, 2010) (Wells, J.). Furthermore, the FBOP's duty encompasses calculating how much of a sentence the offender has left to serve, as the offender has a right to certain jail-time credit. *Id*. Moreover, the FBOP is presumed to follow the law. *See, e.g., Garner v. Jones*, 529 U.S. 244, 256, 120 S. Ct. 1362 (2000) ("we presume the Board [of Pardons and Paroles of Georgia] follows its statutory commands and internal policies in fulfilling its obligations."); *accord Bueno v. United States,* 2013 WL 12112492, at *2 (W.D.Pa., Mar. 18, 2013) ("BOP is presumed to follow the law and so it is Petitioner's burden to show otherwise in this Section 2241 petition and to show that the BOP abused its discretion in calculating his sentences.")

 Jail-time credit is governed by statute. The pertinent section provides:

 (a) Commencement of sentence. -- A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

 (b) Credit for prior custody. -- A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--

  (1) as a result of the offense for which the sentence was imposed; or

  (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

 *that has not been credited against another sentence*.

18 U.S.C. § 3585 (emphasis added).

As pointed out by Respondent, Petitioner's argument is not set forth with particular clarity. Indeed, Petitioner's brief and prior filings are unclear regarding the exact dates he believes should have been considered and how many days he believes he should be credited. In Exhibit G attached to his brief in support of the section 2241 petition, Petitioner proceeding *pro se* had argued in a Motion to Amend Judgment before the sentencing court—the Western District of Michigan—that he was entitled to 445 days of jail time credit toward his federal sentence, the entirety of the time between his arrested on September 18, 2016, until December 11, 2017, the date his federal sentence began.[8] (R. 3-6, PageID# 60, Exh. G). Then, in Exhibit A to his Amended Petition, Petitioner wrote that "[he] claimed then, and still claims now, that he should receive pre-sentencing credit from the date the Federal Writ was executed on February 10, 2017, until his date of sentencing" for a total of 304 days. (R. 11, PageID# 153). Finally, in the same document, Petitioner asserts that the federal government interfered with Petitioner's ability to complete a "Special Alternative Incarceration" (SAI) program under Michigan state law that would have allowed him to be released no later than April of 2017. (R. 3, PageID# 21-22). Petitioner further asserts that due to the federal writ, it became impossible for Petitioner to complete the SAI. *Id*. It follows, according to Petitioner's opposition brief, that he believes that but for "the fault of the Federal government alone, he would have paroled on his Michigan case on an earlier date that would have necessarily resulted in additional credit against his Federal sentence, given the Federal Writ." (R. 14, PageID# 214).

---

[8] Petitioner's motion was denied for want of jurisdiction, as the exclusive remedy for challenging the FBOP's calculation of a federal sentence is a habeas petition under 28 U.S.C. § 2241. (R. 3-7, PageID# 75, Exh. H).

It cannot reasonably be disputed that Petitioner's federal sentence commenced on December 11, 2017—the day he was sentenced in federal court. "Section 3585(a) establishes when a federal sentence commences. If a federal sentence is ordered to run concurrently with pre-existing state sentence, the federal sentence begins to run w*hen the federal sentence is imposed*." *Arnold v. Holland*, No. 6: 16-42-GFVT, 2016 U.S. Dist. LEXIS 76257, at *4 (E.D. Ky. June 13, 2016) (emphasis added). The sentencing order from the U.S. District Court for Western Michigan expressly stated that Petitioner's 70-month prison term was to be served "concurrently to any *undischarged* term of imprisonment in Kalamazoo county …." (R. 13-1, PageID# 191) (emphasis added). On the date of the federal court's judgment, December 11, 2017, the time period for which Petitioner seeks credit—time from September of 2016 or April of 2017 until December 11, 2017—was *already* discharged. The federal court's language appears carefully chosen to comply with applicable statutes.

Pursuant to U.S.S.G. 5G1.3 of the sentencing guidelines, regardless of whether a defendant ultimately receives a sentence that runs consecutively or concurrently to a pre-existing sentence, the sentence is always ordered to be served consecutively or concurrently to the "undischarged term of imprisonment." This is consistent with federal law, which states that "a sentence cannot begin before the date on which it was imposed." *Robles v. Hanson*, Case No. 4:15-cv-1220, 2016 U.S. Dist. LEXIS 37054 (N.D. Ohio 2016) (Zouhary, J.) (*citing* 18 U.S.C. § 3585(a)).

Courts have consistently found that an individual convicted in federal court cannot receive credit for time serving a state or unrelated federal sentence *prior* to the date on which the federal sentence commenced. In *Huffman v. Perez*, 230 F.3d 1358 (6th Cir. 2000), the court was confronted with a nearly identical argument at issue here, where the defendant asserted that a

9

twenty-six month period during which he was primarily in the custody of a North Carolina state prison, and secondarily in the custody of the U.S. Marshals Service pursuant to a writ of habeas corpus *ad prosequendum*, should have been credited towards his federal sentence. The Sixth Circuit found the argument meritless, explaining that the defendant received credit on his state sentence for the time served in state prison and "[c]onsequently, he may not receive credit for this time on his federal sentence." *Id*. (*citing* 18 U.S.C. § 3585(b); *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993)).

The *Huffman* decision noted that if the defendant received federal credit for time served in state prison towards a state sentence, he would receive improper double credit. *Id*.; *see also Doan v. Lamanna*, 27 Fed. App'x 297, 299 (6th Cir. 2001) ("[Appellant] apparently argues that the Georgia sentence should have been run concurrently with the entire 51-month term of the Florida sentence. However, under § 3585(a), a sentence to a term of imprisonment begins on the date the defendant is received into custody. Consequently, his Georgia sentence could not begin to run until after his sentencing in October 1998."); *Cole v. Johnson*, 2015 WL 4418750 at *4 (M.D. Tenn. July 16, 2015) ("A federal sentence does not begin until a prisoner is actually in BOP custody."); *Homan v. Terris*, 2014 WL 2779972 at *3 (E.D. Mich. June 19, 2014) ("Petitioner is not entitled to credit on his federal sentence for the time he spent serving his state sentences prior to the imposition of his federal sentence because a federal sentence cannot commence before the date upon which it is imposed."); *Ramirez v. Withers*, 2013 WL 2903278 at *4 (E.D. Ky. June 13, 2013) ("[B]ecause the time period Ramirez spent in state prison was credited against his state sentences, he cannot use that time to 'receive improper double credit' against his federal sentence.").

Regardless of which theory Petitioner proceeds under, he could not, under federal law,

receive credit for time credited against a state sentence. Notwithstanding Petitioner's reliance on a New York district court decision, which the court addresses below, Petitioner is clearly seeking double-credit, a request that unambiguously runs afoul of 18 U.S.C. § 3585(b). Section 3585 only allows the FBOP to credit time against a sentence "that has not been credited against another sentence." *Id.*

As alluded to above, Petitioner offers a rather novel argument that the federal government interfered with his ability to complete a SAI program under Michigan state law that, if completed successfully, would have allowed him to be released no later than April of 2017. (R. 14, PageID# 214-15). Petitioner believes he should receive jail-time credit from April 2017 until December 11, 2017. First, Petitioner's contention that he would have completed the program is pure conjecture. More importantly, Petitioner's argument does not have the support of any authority, save for a twenty-year-old non-binding decision from a New York district court that has not been followed by any court in this Circuit. *Id.* at ¶ 214. In *Rosemond v. Menifee*, 137 F.Supp.2d 270 (S.D.N.Y. 2000), a petitioner was borrowed on a federal writ just two days prior to his conditional release date from state custody (during the 87 days in temporary federal custody the State could not release him) and, when he was returned to state custody, the state released him just two days later. Under these facts, the *Rosemond* court held that the FBOP could not "unilaterally lengthen a petitioner's state sentence by use of a federal writ," and that "to deny petitioner credit toward his federal sentence—for time that was not credited toward his state sentence which was lengthened solely by the actions of the federal authorities—would represent a manifest injustice." *Id.* at 275.

Based on *Rosemond*, Petitioner contends that he would have been released from the custody of the Michigan Department of Corrections in April of 2017 but for the interference

11

caused by federal authorities, and represents that he would have been released after completing the 90-day SAI program, of which he had allegedly completed approximately 30 days. (R. 14, PageID# 215). First, the facts underlying the present petition are readily distinguishable from *Rosemond*. In *Rosemond*, the petitioner had only two days left to serve in state prison before he would have been paroled. By contrast, based on Petitioner's own representations, he had completed only one-third of the SAI program. This court cannot find a manifest injustice or a violation of Due Process occurred merely because the FBOP declined to speculate that Petitioner would ultimately have completed the SAI program had he not been taken into temporary federal custody to respond to the federal indictment.[9]

More significantly, however, the court declines to follow *Rosemond*, which other decisions from within the Second Circuit have questioned as running afoul of the statutory prohibition against double credit. *See, e.g., Curtis v. Billingsley*, No.16-CV-2558, 2017 WL 1103005, at *7 (S.D.N.Y. Mar. 24, 2017) ("Although the Second Circuit has not confronted this issue, other district courts in this Circuit have expressed skepticism as to *Rosemond*'s consistency with § 3585(b).") The *Curtis* decision observed that "the possibility that Curtis's incarceration was prolonged because of his transfer to federal detention pursuant to a writ of habeas corpus *ad prosequendum* is not a basis to disregard 18 U.S.C. § 3585(b)'s prohibition of double counting." *Id*. at *6. More recently, another decision has expressly discussed the questionable validity of *Rosemond* in the face of § 3585(b):

> There are several problems with *Rosemond'*s application to the instant case. First, it is doubtful whether its holding can be reconciled with 18 U.S.C. § 3585(b)'s

---

[9] Notably, the State of Michigan also did not assume that Petitioner would have completed the SAI program but for the transfer to temporary federal custody, as, once he was returned to state custody on December 18, 2017, he remained in state custody until February 14, 2018—an additional 58 days.

12

> prohibition against double counting. Although the Second Circuit has not addressed the issue, other district courts in that Circuit have expressed skepticism as to its consistency with § 3585(b). *See, e.g., Sbarro v. Billingsley*, 2013 WL 120817 at *5 (S.D.N.Y. 2013) (noting that *Rosemond*'s approach "has not ...been adopted by the Second Circuit, and other courts here and in other circuits have held that it cannot apply to time periods that have already been credited to a state sentence—that is, they have held that the prohibition on double-counting trumps any such exception"); *Mitchell v. Killian*, No. 08-CV-2373 (LAP), 2011 WL 710612, at *2 (S.D.N.Y. Feb. 25, 2011) (noting that *Rosemond* is not...settled law. Furthermore, the cases relied upon in *Rosemond* all were cases where the computation of sentence was governed by 18 U.S.C. § 3568, the predecessor to § 3586(b).

*Ernle v. Entzel*, 2019 WL 2617827, at *6 (N.D.W.Va., 2019).

Because the time period between April of 2017 until Petitioner's December 11, 2017 federal sentence was indisputably credited towards Petitioner's state sentence, the FBOP could not have credited Petitioner for jail-time served during this period without double-crediting time and running afoul of 18 U.S.C. § 3585(b). Therefore, it is recommended that Petitioner's motion for summary judgment be GRANTED.

**C.     Exhaustion**

As the court recommends Respondent's motion for summary judgment be granted, Respondent's motion to dismiss is thereby rendered moot. The court declines to consider that moot motion, in the interests of judicial economy.

### IV. Conclusion

For the foregoing reasons, it is recommended that Ballard's Petition and Amended Petition (R. 1, 10) be DENIED and summary judgment (R. 13) GRANTED.

/s/ David A. Ruiz
U.S. MAGISTRATE JUDGE

Date: February 3, 2022

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F.3d 520, 530-31 (6th Cir. 2019).